OSCAR B. STILLMAN *vs.* CHARLES M. DOUGHERTY, Receiver of THE BALTIMORE OIL MANUFACTURING COMPANY of BALTIMORE CITY.

*Right of a Receiver of the estate and effects of a Dissolved Corporation, to maintain a suit against a Delinquent Stockholder for an Unpaid balance on his Subscription to the Stock of the Company—When the Fact that the Whole amount of the Capital stock is not Subscribed, will be no bar to such Action.*

The Baltimore Oil Manufacturing Company of Baltimore City, was formed and the certificate duly recorded on the 12th day of July, 1869, with a capital stock of $100,000, divided into one hundred shares of the par value of $1000 each. On the 24th of April, 1871, the corporation filed its bill under the 186th and following sections of the Act of 1868, ch. 471, (the General Corporation Law,) praying a dissolution for the reasons therein stated; and on the 20th of July following, a decree was passed dissolving the same and appointing a receiver "with power and authority to take charge and possession of the goods, wares and merchandise, books, papers and effects of the said Company, and to collect the outstanding debts due thereto." Up to this time only $80,000 of the capital stock had been subscribed, and on this only $68,200 had been paid in. HELD :

1st. That under the provisions of the Act of 1868, ch. 471, relating to the dissolution of corporations, the receiver was entitled to maintain an action against a stockholder for a balance due on his subscription to the capital stock of the dissolved corporation.

2nd. That the fact that the whole amount of the capital stock had not been subscribed, was no bar to the action, provided the defendant knew the fact, and participated in the affairs of the company in a way which could only properly be done upon the assumption that the subscribers intended to proceed with the stock partially subscribed.

APPEAL from the Superior Court of Baltimore City.

The appellee sued the appellant in *assumpsit* to recover the sum of $1432.12 alleged to be due to the Baltimore

Oil Manufacturing Company and payable to the plaintiff as receiver of said company. The defendant's alleged indebtedness consisted of two items—one of $632.12, charged as his share of the losses by the company, and the other of $800 charged as balance due on his subscription to the stock of the company. The case is further stated in the opinion of the Court. The defendant excepted to the refusal of the Court to grant his first and fourth prayers, and to the granting of the first prayer of the plaintiff. By the third prayer of the defendant, which the Court (DOBBIN, J.,) granted, the jury were instructed that the liability of the defendant for his proportion of the losses sustained by the company, if such liability existed as claimed, could only be enforced in a Court of Equity, with proper parties, and not in the present form of proceeding.

The jury found a verdict for the plaintiff for $800, the amount claimed as the balance due on the defendant's stock subscription; and judgment was entered accordingly. The defendant appealed.

The cause was submitted to BARTOL, C. J., BOWIE, STEWART, BRENT, GRASON, MILLER, ALVEY and ROBINSON, J.

*Thomas W. Hall*, for the appellant.

The capital stock of the Baltimore Oil Manufacturing Company was fixed at $100,000, in shares of $1000 each; of this only $80,000 was ever subscribed, and upon one subscription for $10,000 nothing was ever paid. The company, therefore, was never properly organized under the statute, or in a condition to make valid calls or assessments, or to enforce payment by subscribers of their stock subscriptions. *Hughes vs. Antietam Manufacturing Co.*, 34 *Md.*, 331–2; *Hager vs. Cleveland and Bassett*, 36 *Md.*, 490–1.

In the last mentioned case it was decided by this Court, that in a suit brought *by a creditor to enforce the statutory*

*individual liability of a stockholder*, a waiver of the condition, which exempts subscribers from payment of their subscription, until all the capital stock has been subscribed, might be implied from acts of personal participation in the proceedings of the company, indicating an intention to proceed with the stock partially taken up, and that a subscriber who had so participated, would be *estopped* from denying the regularity of the organization, or setting up the defence of a partial subscription of the capital stock. The Court below *erred*, in the present instance, in applying this rule of *waiver* or *estoppel*, to a case arising between the company (or which is the same thing, the receiver of the company,) and a subscriber—a totally different case from that presented in *Hager vs. Cleveland and Bassett*.

Article 26, sec. 65 of the Code of Public General Laws, title "Corporation," prescribes specifically how notice shall be given, to subscribers, of calls or assessments. This requirement of this Article and section, which are identical with sec. 49 of the same Article, as it stood prior to 1868, has been construed by this Court in the case already referred to, of *Hughes vs. Antietam Manf. Co.*, 34 *Md.*, 330–1.

This statutory requirement does not appear to have been complied with in the case of the appellant. There is nothing to show either personal notice to Stillman, or notice by publication, of any call. The strictness with which the requirement of the statute must be complied with, is shown in the case cited, in which *written* notice through the mail, was held not to be a compliance.

Stillman was present at none of the meetings at which calls or assessments were ordered by the directors. It does not appear that he ever saw the account in which his balance of indebtedness is made to appear, much less approved of it. The defendant's first prayer should not have been rejected.

*John H. B. Latrobe,* for the appellee.

MILLER, J., delivered the opinion of the Court.

For the purpose of this appeal this case must be treated as a suit brought by the receiver of a dissolved corporation (which had been formed under the General Corporation Law of 1868, ch. 471,) for the sole purpose of recovering from a delinquent stockholder an unpaid balance due on his subscription for stock.

It appears the corporation in question was formed and the certificate duly recorded on the 12th of July, 1869, with a capital stock of $100,000, divided into one hundred shares of the par value of $1000 each. On the 24th of April, 1871, the corporation filed its bill under the 186th the reasons therein stated, and on the 20th of July follow- and following sections of the law, praying a dissolution, for ing, a decree was passed dissolving the same and appoint- ing the appellee receiver of its estate and effects, "with power and authority to take charge and possession of the goods, wares and merchandise, books, papers and effects of the said company, and to collect the outstanding debts due thereto." Up to this time but $80,000 of the capital stock had been subscribed, and on this only $68,200 had been paid in. There was a balance of $800 due by the appellant on his subscription for ten shares.

We have examined the several sections of this law relat- ing to the dissolution of corporations, and are of opinion that under them the receiver is entitled to maintain this action. He is vested with all the estate and assets of every kind belonging to the corporation, and is made a trustee thereof for the benefit of the creditors and stockholders, and by section 192, it is not only provided that no dissolution shall relieve stockholders from the individual liability imposed by a previous section, but it is also declared that " if the said corporation shall be dissolved *before its capital stock shall have been paid in,* the liability of its stock-

holders shall continue *to the receiver* or to the creditors of the corporation who were such prior to its dissolution, *in all respects as if the same had not been dissolved,*" and by section 195, power to bring suits is expressly conferred on the receiver.

At the trial several rulings were made on other points which the appeal does not bring up for review.   The only rulings we can now revise are the granting of the plaintiff's first prayer, and the rejection of the defendant's first prayer, and these we shall dispose of in their order.

1st.  By granting the plaintiff's first prayer the Court instructed the jury, that the fact that the whole amount of the capital stock was *not subscribed,* is no bar to the action, *provided* they shall find that the defendant knew that fact, and participated in the affairs of the company in a way which could only properly be done upon the assumption that the subscribers intended to proceed with the stock partially subscribed.   This instruction embodies substantially the law announced in *Hager vs. Cleveland, et al.,* 36 *Md.,* 476.   It was there decided that as a general rule no valid assessments or calls can be made on subscribers until the whole capital stock is taken up, and the subscriptions to that extent may be considered as conditional, but it is a condition the subscribers may waive, and this waiver we said "may be either *express* or *implied* from the acts and declarations of the subscribers ; if knowing the whole capital stock has not been taken, they attend the meetings of the company, coöperate in the votes for the expenditure of money—for the purchase of property—for the making of contracts, and other acts which could only be properly done upon the assumption that the subscribers intended to proceed with the stock partially taken up, they would be estopped from setting up such a defence."   In that case the suit was by a creditor to enforce the individual liability of the stockholder, but we see no reason why the same doctrine should not be applied here where the suit

is by the receiver who represents not only the stockholders but the creditors of the dissolved corporation. It is said however, there is *no evidence* in this record that there was any such participation on the part of the appellant in the proceedings of this company as would bring him within the operation of this rule. But no exception appears in the record to have been taken to this instruction on that ground, and we cannot consider it. The fourth rule and regulation respecting appeals (29 *Md.*, 2,) adopted by the Judges of this Court under the provisions of the Constitution, which gives to such rules the force of law, was passed to meet just such a case. We therefore find no error in this instruction.

2nd. The defendant's first prayer asked the Court to instruct the jury that the plaintiff is not entitled to recover the balance alleged to be due on his stock-subscription, because there is *no evidence* of any valid *call or assessment* upon stockholders under the provisions of the statutes. This does not raise the question which the appellant's counsel has argued, that there was no evidence that the appellant *had due notice* of such calls or assessments, but simply that there was no evidence that such calls or assessments had been in fact made or validly made. The record however abundantly shows, that resolutions and orders of the Board of Directors making such calls or assessments were duly passed. For this reason there was no error in rejecting this prayer. As to the question, whether personal service or publication was necessary in order to affect the appellant, who was a member of the Board of Directors which passed these resolutions and orders, with notice thereof, we express no opinion.

*Judgment affirmed.*

(Decided 8th March, 1876.)